UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X   Case No.
QUISHA DAUGHTEROFESSIE,

                                              **COMPLAINT**

                  Plaintiff,

      -against-                                Plaintiff Demands
                                               A Trial By Jury

DP BRONX LLC, individually and d/b/a "DOMINO'S
PIZZA," and RANDY HANIFF, individually,

                  Defendants.
------------------------------------------------------------------------X

Plaintiff, Quisha Daughterofessie, by and through her attorneys, Phillips & Associates, PLLC, upon information and belief, complains of Defendants as follows:

## INTRODUCTION

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §2000e et seq. ("Title VII") and to remedy violations of the New York State Human Rights Law, New York State Executive Law, §§ 296 et seq. ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-107 *et. seq*. ("NYCHRL"), based upon the supplemental jurisdiction of this Court pursuant to *Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of her sex/gender, together with sexual harassment, *quid pro quo* sexual harassment, creating a hostile work environment, retaliation, assault and battery, and wrongful termination.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343, and supplemental jurisdiction thereto.

3. This action involves a Question of Federal Law.

4. Venue is proper in this district based upon the fact that a substantial part of the events and omissions giving rise to the claim occurred within the Southern District of the State of New York. 28 U.S.C. §1391(b).

5. On or about July 10, 2023, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

6. On or about June 21, 2024, Plaintiff received a Notice of Right to Sue Letter from the EEOC.

7. This action is brought within ninety (90) days of said Notice of Right to Sue Letter.

## PARTIES

8. Plaintiff is a female resident of the State of New York, County of Bronx.

9. At all times material, DP BRONX LLC, individually and d/b/a "DOMINO'S PIZZA," (hereinafter also referred to as "DOMINO'S") was and is a domestic business corporation duly operating under the laws of the State of New York.

10. At all times material, Defendant DOMINO'S was and is a nationwide pizza restaurant chain with a location at 1351 Webster Avenue, Bronx, NY 10456.

11. At all times material, Defendant RANDY HANIFF (hereinafter also referred to as "HANIFF") was and is a male resident of the State of New York.

12. At all times material, Defendant HANIFF was and is a "Manager" at Defendant DOMINO'S.

13. At all times material, Defendant HANIFF was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

14. Defendant DOMINO'S and Defendant HANIFF are hereinafter collectively referred to as "Defendants."

15. At all times material, Plaintiff was an employee of Defendants.

## MATERIAL FACTS

16. In or around 2017, Plaintiff began working for Defendant DOMINO'S as an "Expert Delivery Driver," at the store located at 1351 Webster Avenue, Bronx, NY 10456. Plaintiff was responsible for fulfilling delivery orders to customers.

17. At the beginning of her employment, Plaintiff was involved in a consensual relationship with her manager, Defendant HANIFF.

18. That year, Defendant HANIFF was transferred to a different Defendant DOMINO'S location on Webster Avenue near Fordham Road. After that, District Manager Angel Cabrera, became Plaintiff's direct supervisor.

19. In or around Spring 2019, Defendant HANIFF was transferred to another Defendant DOMINO's location at 2075 Jerome Avenue, Bronx, NY 10453 after the location he was working at sustained significant damage from a fire.

20. In or around Summer 2019, Plaintiff ended the consensual relationship with Defendant HANIFF. Plaintiff and Defendant HANIFF spoke to each other occasionally after the relationship ended, but never engaged in romantic or sexual contact after that.

21. However, in or around August 2021, Defendant HANIFF was transferred back to the 1351 Webster Avenue, Bronx, NY 10456 location.

22. Immediately upon being transferred back to Plaintiff's workplace, Defendant HANIFF began to sexually harass Plaintiff.

23. For example, during the first month that they worked together, Defendant HANIFF asked Plaintiff to kiss him. Plaintiff declined.

24. Despite Plaintiff's clear disinterest, Defendant HANIFF continued to pursue Plaintiff.

25. For example, Defendant HANIFF asked Plaintiff to work near the oven with him, even though she was hired as a Delivery Driver. If Plaintiff helped him with the oven, he would try to kiss her again.

26. Even after Plaintiff clearly said no for weeks, Defendant HANIFF continued to ask Plaintiff to kiss him. When Defendant HANIFF tried to kiss her, Plaintiff repeatedly told him, "Come on, stop. The (surveillance) camera is right there." Defendant HANIFF replied, "[Mr. Cabrera] is not paying attention to that camera and [Mr. Cabrera] can't see us."

27. During his first two months at the 1351 Webster Avenue location, on days where business in the restaurant was slow, Defendant HANIFF insisted on joining Plaintiff on her delivery drives. Each time, Plaintiff objected, but Defendant HANIFF went with her anyway.

28. **During the drives with Plaintiff**, **Defendant HANIFF would grab Plaintiff's breasts**, **and/or touch her vagina**, **while she was driving**. Plaintiff attempted to swat Defendant HANIFF's hand away, but feared for her safety because she was driving the car. Plaintiff told Defendant HANIFF to stop touching her, but he continued.

29. Plaintiff feared that if she complained about Defendant HANIFF's harassment, that she would be terminated, and not him, because he was a manager.

30. In further harassment, on a regular basis, Defendant HANIFF asked Plaintiff to have sex with him at work.

31. For example, each time Plaintiff went to use the restroom at work, Defendant HANIFF followed her. On one occasion, Defendant HANIFF followed Plaintiff into the restroom, forcibly kissed her, and grabbed at her breasts and vagina without her consent.

4

32. Each time, Plaintiff begged Defendant HANIFF to stop touching her. To try to get him to stop, Plaintiff told Defendant HANIFF that she was embarrassed because there were other employees outside the bathroom.

33. Instead of stopping, Defendant HANIFF said, "**Come on, let's have sex. I got my camera, I can see who's coming in and out**."[1]

34. At other times, if Plaintiff was already in the bathroom, and the door was closed, Defendant HANIFF would wait outside the locked door. When he heard Plaintiff unlock the door, Defendant HANIFF would forcefully pull the door open and walk inside, physically preventing Plaintiff from returning to work.

35. On more than ten (10) occasions, **Defendant HANIFF forced Plaintiff to have sex with him in the bathroom at work**. Plaintiff engaged in the unwanted sexual intercourse because she felt that she was not allowed to leave the restroom until she gave into Defendant HANIFF's sexual advances.

36. Defendant HANIFF also requested that Plaintiff meet him in the bathroom for sexual intercourse, but Plaintiff did not comply with these requests. Plaintiff only engaged in unwanted sexual intercourse with Defendant HANIFF when she was "cornered" in the bathroom with him.

37. When Plaintiff objected to Defendant HANIFF's actions, he would tell her, "They'll transfer you," or "They'll fire you and not me."

38. Additionally, the only other manager that Plaintiff could report to was Mr. Cabrera, who also subjected her to sexual harassment.

---

[1] As a manager, Defendant HANIFF had access to Defendant DOMINO's security system from his cellphone and could monitor where employees were located in the store.

39. For example, whenever Mr. Cabrera was in the store at the same time as Plaintiff, Mr. Cabrera would leer at Plaintiff's buttocks.

40. On several occasions, **Mr. Cabrera gestured to Plaintiff's buttocks and said**, "**Is *that* yours**?" Each time, Plaintiff gave Mr. Cabrera a disapproving look, and walked away from him.

41. Additionally, Defendant HANIFF and Mr. Cabrera regularly made harassing comments about women's body shapes, such as calling women, including Plaintiff, "**thick**."

42. These comments from Defendant HANIFF and Mr. Cabrera happened for the duration of 2021 until October 2022.

43. On or about September 1, 2021, Defendant HANIFF told Plaintiff about an email complaint that was filed by a Lilibeth Herrera.[2] In the complaint, Ms. Herrera wrote:

> Good afternoon, I finally decided to send this message because we can't handle it anymore. My general manager and the driver [Plaintiff] have a romantic relationship for years and they now working together. I guess I don't have to explain the favoritism that is going on. [Defendant HANIFF] even goes on the road with her to do deliveries while they are both on the clock. Please do something about this situation. Every employee is tired of this situation.

44. Plaintiff was upset that her co-workers believed she was in a consensual relationship with Defendant HANIFF, instead of recognizing that Defendant HANIFF was sexually harassing/abusing her.

45. Despite the complaints from employees, on a weekly basis, Defendant HANIFF told other employees that he and Plaintiff were dating. Each time Plaintiff heard Defendant HANIFF tell her co-workers this, Plaintiff objected by saying, "That's not true."

---

[2] To Plaintiff's knowledge, "Lilibeth Herrera," is an alias. Plaintiff did not have a co-worker named Lilibeth Herrera.

46. After his first two months, to be closer to Plaintiff, Defendant HANIFF told Plaintiff that she would no longer be an Expert Delivery Driver, and that instead, she would work in the store with him. When Plaintiff asked why she was being moved into the restaurant, Defendant HANIFF lied and said that they were the only employees "who know how to use the oven."

47. Plaintiff asked Defendant HANIFF when she could start her deliveries again. Defendant HANIFF said she would not be making deliveries anymore.

48. In early 2022, Plaintiff told Defendant HANIFF that if he continued to harass her, she would report the harassment to higher management at Defendant DOMINO'S. Defendant HANIFF said, "**If [management at Defendant DOMINO's] finds out anything, they'll transfer you, not me**."

49. Defendant HANIFF knew that Plaintiff needed to remain at her location because it was close to her children's school. Plaintiff was responsible for bringing her children to and from school. So, Plaintiff complied and completed her duties in-store with Defendant HANIFF, but without escalating her complaints or complaining about the sexual harassment further.

50. In or around October 2022, Defendant HANIFF told Plaintiff that Mr. Cabrera informed him (Defendant HANIFF) that *another* employee complaint had been filed about Plaintiff and Defendant HANIFF's "relationship."

51. At this time, Defendant HANIFF told Plaintiff that due to the complaints, *Plaintiff* would need to be transferred to a different location. Defendant HANIFF then took Plaintiff off of the schedule entirely.

52. Defendant HANIFF insisted that he would place her in a new restaurant location. However, Plaintiff never heard back from Defendant HANIFF about placement, and Defendant HANIFF did not place her back on the schedule for any of Defendant DOMINO'S locations.

53. Defendant HANIFF terminated Plaintiff to prevent any future allegations or reports of sexual harassment against him.

54. Defendants would not have harassed Plaintiff but for her sex/gender.

55. The terms and conditions of Plaintiff's employment were based on his submission to, and/or refusal of, Defendant HANIFF's sexual advances.

56. Defendants would not have retaliated against Plaintiff but for her objections to Defendant HANIFF's sexual advances.

57. As a result of Defendants' actions, Plaintiff felt, and continues to feel, extremely humiliated, degraded, violated, embarrassed, and emotionally distressed.

58. As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, she suffered, and continues to suffer, severe emotional distress and physical ailments.

59. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses and emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

60. As Defendants' conduct has been malicious, willful, outrageous, and conducted will full knowledge of the law, Plaintiff demands punitive damages against all of the Defendants, jointly and severally.

### AS A FIRST CAUSE OF ACTION
### UNDER TITLE VII
### DISCRIMINATION
### (Against the Corporate Defendant only)

61. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

62. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended, for relief based upon Defendant DOMINOS' unlawful employment practices. Plaintiff complains of Defendant DOMINOS' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex.

63. Defendant DOMINO'S engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff on the basis of her sex, together with sexual harassment, *quid pro quo* sexual harassment, creating a hostile work environment and unlawful termination.

### AS A SECOND CAUSE OF ACTION
### UNDER TITLE VII
### <u>RETALIATION</u>
### <u>(Against the Corporate Defendant only)</u>

97. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

98. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be an unlawful employment practice for an employer:

> "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

99. Defendant DOMINO'S engaged in an unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.* by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment, because of her opposition to its unlawful employment practices.

9

## AS A THIRD CAUSE OF ACTION
## UNDER THE NEW YORK STATE HUMAN RIGHTS LAW
## <u>DISCRIMINATION</u>

100. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

101. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's … sex … to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

102. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff on the basis of her sex, together with sexual harassment, *quid pro quo* sexual harassment, creating a hostile work environment and unlawful termination

103. Plaintiff hereby makes a claim against Defendants under all applicable paragraphs of Executive Law Section 296.

## AS A FOURTH CAUSE OF ACTION
## UNDER THE NEW YORK STATE HUMAN RIGHTS LAW
## <u>RETALIATION</u>

104. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

105. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person before he has opposed any practices forbidden under this article."

106. Defendants engaged in an unlawful and retaliatory discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because of her opposition to Defendants' unlawful actions.

### AS AN FIFTH CAUSE OF ACTION
### UNDER THE NEW YORK CITY HUMAN RIGHTS LAW
### DISCRIMINATION

107. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

108. The Administrative Code of City of New York, Title 8, §8-107 [1] provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee of agent thereof, because of the actual or perceived … gender … of any person; […] (2), to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

109. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff on the basis of her sex, together with sexual harassment, *quid pro quo* sexual harassment, creating a hostile work environment, and unlawful termination

### AS A SIXTH CAUSE OF ACTION
### UNDER THE NEW YORK CITY HUMAN RIGHTS LAW
### RETALIATION

110. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

111. The New York City Administrative Code Title 8-107(7) provides that:

> "It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in

  any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter…"

112. Defendants engaged in an unlawful and retaliatory discriminatory practice by retaliating, and otherwise discriminating against Plaintiff, including, but not limited to terminating Plaintiff.

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that the Defendants engaged in unlawful employment practices prohibited by Title VII, the New York State Human Rights Law and the New York City Human Rights Law on the basis of Plaintiff's sex/gender, together with sexual harassment, *quid pro quo* sexual harassment, creating a hostile work environment, and unlawful termination;

B. Awarding damages to the Plaintiff for any lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation in an amount in excess of the jurisdiction of all lower courts;

D. Awarding Plaintiff Punitive Damages;

E. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy the Defendants' unlawful employment practices.

**JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff demands judgment against Defendants in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: July 31, 2024
New York, NY

          **PHILLIPS & ASSOCIATES, PLLC**
          *Attorneys for Plaintiff*

By: /s/Laura E. Bellini, Esq.
     Laura E. Bellini, Esq.
     45 Broadway, Suite 430
     New York, NY 10006
     212-248-7431